IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AJ SUNDAY, III, On Behalf of Himself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| V. | § § | |
| HELMERICH & PAYNE INTERNATIONAL DRILLING CO., | § § | CIVIL ACTION NO.  5:15-cv-731 |
| | § | JURY TRIAL DEMANDED |
| Defendant. | § § | COLLECTIVE AND CLASS ACTION |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiffs, AJ SUNDAY, III ("Sunday" or "Plaintiff") on behalf of himself and all other similarly situated employees, file this Original Complaint against HELMERICH & PAYNE INTERNATIONAL DRILLING CO. ("HPID" or "Defendant"), showing in support as follows:

### I.      NATURE OF THE ACTION

1.      Plaintiff brings this action pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101-2109 *et seq.*, (the "WARN Act") and the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219.

2.      Plaintiff brings this action under the WARN Act for Defendant's failure to give the required WARN Act written notice to Plaintiff and similarly situated former employees ("WARN Class Members") in connection with recent Mass Layoffs and/or Plant Closings at Defendant's Seguin, Texas site of employment/operational units within that site of employment at/from/through which Plaintiff and WARN Class Members were employed during the relevant time period.

3.      Plaintiff and WARN Class Members seek to recover up to 60 days wages and benefits pursuant to 29 U.S.C. § 2101 from Defendant. Defendant is liable under the WARN Act for its failure to provide Plaintiff and WARN Class Members at least 60 days' advance written notice of termination, as required by the WARN Act. These employees are similarly-situated under the class action provisions of Federal Rule of Civil Procedure 23 ("Rule 23").

4.      Plaintiff also brings this action as a FLSA collective action on behalf of himself and similarly situated individuals ("Collective Action Members") for Defendant's failure to pay Plaintiff and Collective Action Members time and one-half their regular rate of pay for all hours worked over 40 during each seven day workweek. Plaintiff and Collective Action Members are or were oilfield workers who were paid an hourly rate of pay and were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each seven day workweek in the time period of three years preceding the date this lawsuit was filed and forward. Namely, Plaintiff and Collective Action Members were not paid all overtime wages owed because Defendant failed to include all remuneration required by the FLSA in calculating their regular rates of pay.

5.      Plaintiff and Collective Action Members seek all damages available under the FLSA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest.

## II.      THE PARTIES, JURISDICTION, AND VENUE

### A.      Plaintiff AJ Sunday, III

6.      Sunday is a natural person who resides in Williamson County, Texas. He has standing to file this lawsuit.

7.     Sunday was employed by Defendant as an oilfield worker where he worked for Defendant's oilfield operations in Texas, including significant work in and around Seguin, Texas.

8.     Sunday's employment with Defendant was verbally terminated without any advance written warning on or about April 15, 2015 ("Sunday's Employment Loss"). At all times relevant, Sunday was a full time employee of Defendant.

9.     Sunday brings his claims on behalf of himself and the Collective Action and WARN Class Members.

B.     **WARN Class Members**

10.     The Class Members are affected employees who are similarly situated to Sunday, and who were or may reasonably be expected to experience an employment loss due to termination of employment as a consequence of Defendant's Mass Layoff at Defendant's Seguin, Texas site of employment in the 30 day or 90 day period from Sunday's Employment Loss.

11.     Alternatively, the Class Members are affected employees who are similarly situated to Sunday, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Plant Closing at Defendant's single site of employment/operational units at/within that single site of employment made the subject matter of this lawsuit in the 30 day or 90 day period from Sunday's employment loss.

12.     On information and belief, the single site of employment for purposes of the WARN Act is Defendant's principal place of business in Seguin, Texas.

13.     Alternatively, the various drilling rigs which operate/operated in connection with Defendant's drilling operations at/from/through the Seguin, Texas yard are/were the single site

of employment for employees of Defendant, such as Sunday and the Class members, pursuant to 20 C.F.R. § 639.3(i)(3),(4), or (6).

14.     Alternatively, should discovery reveal that there is more than one single site of employment for Sunday and the Class Members, Plaintiff reserves the right to modify the class definition or establish sub-classes in connection with any amended pleading and/or motion for class certification.

### C.     FLSA Collective Action Members

15.     The putative FLSA Collective Action Members are all current and/or former hourly paid oilfield worker employees of Defendant who, like Plaintiff, are/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven day workweek due to Defendant's failure to calculate the regular rates of pay in accordance with the FLSA.

16.     While their precise job duties might vary somewhat as oilfield worker employees (*i.e.* driller, derrick hand, motor man, floor hand, etc.), those differences do not matter for purposes of determining their entitlement to overtime pay. Because Defendant did not pay all overtime premium compensation to its hourly oilfield worker employees who routinely worked in excess of 40 hours per workweek, Plaintiff and the putative Collective Action Members are all similarly situated within the meaning of Section 216(b) of the FLSA.

17.     The relevant time period for the claims of the putative Collective Action Members is three years preceding the date this lawsuit was filed and forward.

### D.     Defendant Helmerich

18.     On information and belief, Defendant is a foreign corporation organized under the laws of the State of Delaware.

19.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas.

20.     On information and belief, during the time period relevant to this lawsuit, Defendant's principal place of business is and has been at or near an 1437 South Boulder Ave., Tulsa, Oklahoma 74119.

21.     Defendant maintains multiple district offices/yards throughout the United States from which drilling rig workers, support personnel, supplies and equipment are based and dispatched on a variety of work projects, including oil and/or gas exploration and production projects.

22.     At all times relevant to this lawsuit, Defendant has been an "enterprise engaged in commerce" as defined by the FLSA.

23.     At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

24.     At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

25.     For example, Defendant employed two or more employees who regularly engaged in commerce in their daily work. Examples of that commerce include drilling rig work offered/provided by Defendant to customers in Texas and states other than Texas and communications by phone, mail, and internet with customers/prospective customers in Texas and states other than Texas.

26.     Furthermore, Defendant employed two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved

in and/or produced for commerce. Examples of such goods and/or materials include tools, vehicles, equipment and supplies/materials used in connection with drilling rig operations.

27.     On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume in excess of $500,000.

28.     Defendant may be served with summons through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

**E.     <u>Jurisdiction and Venue</u>**

29.     The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

30.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

31.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases his claims on federal law namely the FLSA and the WARN Act.

32.     Venue is proper in the United States District Court for the Western District of Texas because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district. Moreover, Defendant maintains a place of business within this District.

33.     Venue is proper in the San Antonio Division of the United States District Court for the Western District of Texas because, as previously identified, Defendant maintains a place of business within the San Antonio Division and a substantial part of the events giving rise to the claims in this lawsuit occurred in the San Antonio Division.

**III.     <u>FACTUAL BACKGROUND</u>**

34.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

35.     Defendant employs/employed numerous oilfield workers in connection with its drilling operations throughout locations in the United States that are within the scope and coverage of the FLSA. Those oilfield workers work/worked on and/or in support of Defendant's drilling rigs which drill/drilled for oil and or natural gas.

36.     Defendant's drilling rigs operate/operated from numerous yards/sites of employment around the United States. Oilfield workers worked at/from/through those yards/sites of employment in connection with Defendant's drilling rig operations. For example, Plaintiff worked at/from/through Defendant's office/yard located at or near 567 I-10 Frontage Road, Seguin, Texas 78155.

37.     Plaintiff was an hourly paid employee who worked on Defendant's drilling rigs in and around the Eagle Ford Shale. Plaintiff routinely worked in excess of 40 hours in a seven day workweek.

38.     Plaintiff was a non-exempt employee of Defendant pursuant to the FLSA. When he worked more than 40 hours per seven day workweek, he was entitled to receive overtime premium compensation at the rate of one and one-half times his regular rate of pay for all such hours worked over 40.

39.     In addition to receiving hourly pay, Plaintiff also received additional remuneration, including performance based bonus compensation such as oil base mud pay and longevity pay.

40.     Although Defendant paid Plaintiff overtime premium compensation for on-the-clock work at one and one-half times his hourly rate of pay, Defendant failed to include all

remuneration required by the FLSA in calculating Plaintiff's regular rate of pay. This resulted in Plaintiff not being paid all overtime compensation owed by Defendant pursuant to the FLSA.

41.     Plaintiff worked with numerous other hourly oilfield worker employees of Defendant at/from/through the Seguin, Texas yard/site of employment. Like Plaintiff, those employees, before, during and after Plaintiff's dates of employment, routinely work/worked in excess of 40 hours per workweek, are/were entitled to overtime premium compensation at one and one-half times their respective regular rates of pay for all overtime hours worked, are/were paid additional remuneration, including performance based bonuses such as oil based mud pay and longevity pay, in addition to their hourly rate, and did not/do not receive all overtime compensation owed by Defendant due to Defendant not including all remuneration required by the FLSA in their respective regular rates of pay.

42.     During times relevant, Defendant operates/operated numerous other yards/sites of employment throughout the United States at/from/through which it conducted drilling rig operations. On information and belief, Defendant employed, and continues to employee, hourly oilfield workers at/from/through those yards/sites who are similarly situated to Plaintiff and who, despite being entitled to overtime premium compensation at one and one-half times their regular rates of pay for all hours worked over 40 in a workweek as FLSA non-exempt employees, were not paid all overtime compensation owed due to Defendant's failure to include all remuneration required by the FLSA in their respective regular rates of pay. Such remuneration includes oil base mud pay and longevity pay.

43.     Although Defendant has recently terminated many employees, on information and belief, it continues to employ hourly oilfield workers that are subject to the aforementioned

practices/policies to not include all remuneration required by the FLSA in their respective regular rate of pay when calculating the overtime wages owed.

44.    On information and belief, and at all times material to this action, Defendant has been a business enterprise that employs 100 or more employees, excluding part-time employees and employees who have worked less than 6 months in the 12 month period preceding the first date that WARN Act notice was required to be given.

45.    Prior to the Mass Layoffs and/or Plant Closings that form the basis of this action, Defendant employed more than 100 employees, exclusive of part-time employees and employees who have worked less than 6 months in the 12 month period preceding the first date that WARN Act notice was required to be given, at each of the sites of employment made the subject matter of this lawsuit.

46.    During the time period before Sunday's employment loss, Defendant operated many drilling rigs connection with its drilling operations in and around the Eagle Ford oilfield play of Texas, including drilling rigs in and around Seguin, Texas. Each drilling rig consisted of multiple crews that worked various shifts. Such a typical drilling rig included, during a 14 day hitch or work crew rotation, two tool pushers, two drillers, two derrick men, two motor men, and four to six floor hands that split daily operations into 12 hour shifts in a typical workday. During the subsequent hitch or work rotation, that crew would typically be replaced by another crew of similar structure and number with the only remaining employees usually being the tool pushers. So, a typical drilling rig of Defendant would have a crew of approximately 22 to 26 employees, exclusive of support personnel such as mechanics, drivers, and administrative support.

47.    On  information and belief, Seguin, Texas is/was the single site of employment, as defined by the WARN Act, for employees of Defendant, such as Sunday and the Class Members.

*Plaintiff's Original Complaint*                                                                                          9

Although Defendant also maintains/maintained other single sites of employment, on information and belief, management of Defendant's Texas Eagle Ford oilfield operations in addition to management and administrative support of Sunday and the Class members, is/was conducted at/from/through the Seguin, Texas single site of employment.

48.     Each such drilling rig constitutes/constituted an operational unit of the Seguin, Texas single site of employment made the subject matter of this lawsuit. Defendant operated multiple drilling rigs at/from/through the Seguin, Texas site of employment made the subject matter of this lawsuit 30 days and/or 90 days prior to Sunday's employment loss.

49.     Alternatively, the various drilling rigs which operate/operated in connection with Defendant's drilling operations at/from/through the Seguin, Texas yard are/were the single site of employment for employees of Defendant, such as Sunday and the Class members, pursuant to 20 C.F.R. § 639.3(i)(3),(4), or (6).

50.     Sunday worked with numerous other employees of Defendant. Those employees performed drilling operations/support of drilling operations for Defendant. Like Sunday, those workers are/were subject to Defendant's Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

51.     Sunday was verbally notified by Defendant on or about April 15, 2015 that his employment with Defendant was terminated or that he otherwise was subject to an employment loss. Sunday was not discharged for cause, did not voluntarily resign, and did not retire.

52.     On and around the time of his verbal notification of employment loss, Sunday learned that numerous other similarly situated employees of Defendant suffered an employment loss. In fact, around the time of Sunday's employment loss, Defendant began the process of "stacking rigs" whereby drilling rigs are removed from operational work and stored with their

crews typically being terminated as employees or otherwise experiencing an employment loss. On information and belief, support personnel, such as mechanics, drivers, and/or administrative employees, also experienced employment losses in connection with the stacking of drilling rigs and employment losses of the drilling rig crews.

53.     On information and belief, the employment losses at the Seguin, Texas site of employment made the subject matter of this lawsuit occurred within a 30 day period of Sunday's employment loss. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of Sunday's employment loss, such employment losses not being the result of separate and distinct actions and causes.

54.     On information and belief, 50 or more employees totaling 1/3 or more of the workforce assigned to/working out of the Seguin, Texas site of employment made the subject matter of this lawsuit experienced employment losses during the relevant time period. On information and belief, said employment losses were not bona fide discharges for cause, voluntary departures, or retirements. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce assigned to/working out of the Seguin, Texas site of employment made the subject matter of this lawsuit had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

55.     The exact number of employees who experienced an employment loss at the Sequin, Texas site of employment made the basis of this lawsuit within a 30 day and 90 day period of Sunday's employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through the Seguin, Texas site of employment is information that is currently known only to Defendant.

56.     Sunday and the Class Members were not provided with 60 days' advance written notice by Defendant of their employment loss, Mass Layoff and/or Plant Closing.

57.     Sunday and the Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

58.     Sunday and the Class Members were not provided with written notice, at any time prior to their termination, of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

## IV.     <u>FIRST CLAIM FOR RELIEF: WARN ACT CLAIM(S)</u>

59.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

60.     At all relevant times, Plaintiff and the Class Members were "full-time employees" of Defendant as that term is used in the Warn Act.

61.     At all relevant times, Defendant was and is an employer under the WARN Act. 29 C.F.R. § 639.3(a).

62.     At material times, Defendant employed, and continues to employ, 100 or more employees, excluding part-time employees.

63.     On information and belief, Defendant's Seguin, Texas site constituted a single site of employment for Sunday and the Class Members. 29 C.F.R. § 639.3(i).

64.     Alternatively, each drilling rig operating at/from/through the Seguin, Texas site of employment made the subject matter of this lawsuit constitutes/constituted an operational unit within that single site of employment of Defendant. 29 C.F.R. § 639.3(j).

65.     Alternatively,  the various drilling rigs which operate/operated in connection with Defendants' drilling operations at/from/through the Seguin, Texas yard are/were the single site of employment for employees of Defendant, such as Sunday and the Class Members. 20 C.F.R. § 639.3 (i)(3),(4), or (6).

66.     Plaintiffs maintain this action on behalf of themselves and on behalf of each other similarly situated employee.

67.     Each Class Member is similarly situated to Sunday with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

**A.     Mass Layoff**

68.     During a 30 day or 90 day period from January 1, 2015, Defendant ordered/executed a "Mass Layoff" at the Seguin, Texas single site of employment as that term is defined by the WARN Act. 29 C.F.R. §§ 639.3(c) & 639.5(a)(i).

69.     Sunday and the Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of this lawsuit. 29 C.F.R. § 639.3(f).

70.     On information and belief, 1/3 of the employees at the single site of employment made the subject matter of this lawsuit, totaling 50 or more employees, suffered an employment loss as a result of that Mass Layoff.

71.     Sunday and the Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Sunday and the Class Members were employees of Defendant who did not receive the

*Plaintiff's Original Complaint*                                                                                        13

written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Seguin, Texas Mass Layoff made the subject matter of this lawsuit.

**B.    Plant Closing**

72.    Pleading in the alternative, and on information and belief, with the number of drilling rigs stacked within 30 days or 90 days of April 15, 2015, Sunday and the Class Members suffered a "Plant Closing." 29 C.F.R. §§639.3(b) & 639.5(a)(ii). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 29 C.F.R. § 639.3(b). Accordingly, each drilling rig operating at/from/through the single site of employment made the basis of this lawsuit was an operational unit of that single site of employment. 29 C.F.R. § 639.3(j).

73.    Sunday and the Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Seguin, Texas Plant Closing. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Sunday and the Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Seguin, Texas Plant Closing made the subject matter of this lawsuit.

**C.    No Written Notice of Mass Layoff and/or Plant Closing**

74.     Sunday and the Class Members were not provided with 60 calendar days' advance written notice by Defendant of their planned/upcoming termination of employment, Mass Layoff and/or Plant Closing.

75.     Sunday and the Class Members were not provided with any written notice by Defendant prior to their termination of employment, Mass Layoff and/or Plant Closing.

76.     Sunday and the Class Members were not provided with written notice, at any time prior to their employment loss, of each and every of the following items in connection with their employment loss, Mass Layoff and/or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

77.     On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the Seguin, Texas Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

78.     On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the termination of the employment loss of Sunday and the Class Members.

D.    **Damages**

79.    As a result of Defendant's violations of the WARN Act, Sunday and the Class Members have suffered damages. Sunday and the Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

## V.    **WARN CLASS ACTION ALLEGATIONS**

80.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

81.    Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1) and (3) and the WARN Act 29 U.S.C. § 2104(a)(5).

82.    Sunday brings this action on behalf of himself and all other similarly situated employees. Sunday seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through its Seguin, Texas single site of employment for its drilling operations who experienced an employment loss during the 30 or 90 day period from April 15, 2015 without 60 days' advance written notice required by the WARN Act." Plaintiff requests the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification and/or amended pleading to the extent discovery reveals that there is more than one single site of employment for Defendant's drilling operations.

83.    Sunday and the Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

84.    Sunday's claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

85.     On information and belief, the Class Members exceed 50 in number, and joinder is therefore impracticable. The precise number of Class Members and their addresses are readily determinable from Defendant's records.

86.     There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

> a. Whether the provisions of the WARN Act apply;
>
> b. Whether Defendant's employees at the Seguin, Texas site of employment for Defendant's drilling operations experienced an employment loss in connection with a "Mass Layoff" and/or "Plant Closing" under the WARN Act;
>
> c. Whether Defendant failed to provide the notices required by the WARN Act;
>
> d. Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and
>
> e.  The appropriate method to calculate damages under the WARN Act.

87.     The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

88.     A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for

Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

89.     Sunday is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the required written notice. He is therefore a member of the class. Sunday is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Sunday is an adequate representative of the class and has the same interests as all of its members. Further, Sunday's claims are typical of the claims of all members of the class, and Sunday will fairly and adequately protect the interests of the absent members of the class. Sunday and his counsel do not have claims or interests that are adverse to the Class Members.

90.     Further, class action treatment of this lawsuit is authorized and appropriate under the WARN Act 29 U.S.C. § 2104(a)(5), which clearly provides that a plaintiff seeking to enforce liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

A.     **SECOND CLAIM FOR RELIEF: FLSA CLAIM**

91.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

A.     **CONTROLLING LEGAL RULES**

92.     The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1).

93.     "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

94.     Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

95.     The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e). With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

96.     Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

**B.     PLAINTIFF'S CONTENTIONS**

97.     At relevant times, Defendant is/was an eligible and covered employer under the FLSA. 29 U.S.C. § 203(d).

98.     At relevant times, Defendant is/has been an enterprise engaged in commerce under the FLSA. 29 U.S.C. § 203(s)(1)(A).

99.     Plaintiff and putative Collective Action Members are/were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

100.    Plaintiff and the putative Collective Action Members are/were paid an hourly rate of pay by Defendant in addition to other remuneration, including oil based mud pay and longevity pay.

101.    At material times, Plaintiff and the putative Collective Action Members regularly work/worked in excess of 40 hours per seven-day workweek as employees of Defendant.

102.    Defendant is/was required to pay Plaintiff and the putative Collective Action Members time and one-half their respective regular rates of pay for all hours worked over 40 in each relevant seven day workweek. 29 U.S.C. § 207(a)(1).

103.    Defendant failed to pay Plaintiff and putative Collective Action Members overtime compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

104.    The putative Collective Action Members are/were similarly situated to the Plaintiff and to each other under the FLSA. 29 U.S.C. § 203(e).

105.    Defendant's violations of the FLSA are/were willful within the meaning of 29 U.S.C. § 255(a). At all material times, Defendant was aware that Plaintiff and the putative Collective Action Members were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in a seven day workweek. Plaintiff and the putative Collective Action Members specifically plead recovery for the time period of three years preceding the date this lawsuit was filed forward for their FLSA claims.

106.    Plaintiff and the putative Collective Action Members seek all damages available for Defendant's failure to timely pay all overtime wages owed.

### VI.    FLSA COLLECTIVE ACTION ALLEGATIONS

107.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

108.    Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (certifying nationwide collective action in FLSA case); *see also*, *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 290 (N.D. Tex. 2012) (same).

109.    Plaintiff seeks to represent a collective action under 29 U.S.C. § 216(b) on behalf of himself and all current and former hourly paid oilfield workers who are/were employed by Defendant and who are/were not paid all overtime compensation owed for all hours worked over 40 in each and every workweek due to Defendant's failure to include all remuneration required by the FLSA in their respective regular rates of pay. The relevant time period for this collective action is three years preceding the date this lawsuit was filed and forward, or such other time period deemed appropriate by the Court.

110.    Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or other proceeding.

111.    Plaintiff further reserves the right to amend the definition of the putative class, or sub classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

### VII.    JURY DEMAND

112.    Plaintiff requests a trial by jury with respect to all claims.

## VIII.    DAMAGES AND PRAYER

113.    Plaintiff, individually and on behalf of all other similarly situated persons, pray

for the following relief as against Defendant:

## WARN Act Claim(s)

a.    An order certifying that the WARN Act claim(s) may be maintained as a Rule 23 class action/class actions;

b.    Designation of the Plaintiff as Class Representatives;

c.    Appointment of Allen R. Vaught, Baron & Budd, P.C., as Class Counsel;

d.    All judgment in favor of the Plaintiff and each of the "affected employees" equal to the sum of: their unpaid wages, salary, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(4);

e.    Pre-judgment and post-judgment interest as allowed by law on the amounts owed under the preceding paragraph;

f.    Plaintiff's reasonable attorneys' fees and the costs and disbursements that the Plaintiffs incurred in prosecuting this action; and

g.    All other relief to which Plaintiff and the WARN Class Members are entitled.

## FLSA Claims

h.    An order conditionally certifying the FLSA Claims as a FLSA collective action and requiring notice to be issued to all putative collective action members;

i.    All damages allowed by the FLSA, including back overtime wages;

j.    Liquidated damages in an amount equal to back FLSA mandated wages;

k.    Legal fees;

l.      Costs;

m.      Post-judgment interest; and

n.      All other relief to which Plaintiff and the FLSA Collective Action
        Members are entitled.

Respectfully submitted,

By:     s/ Allen R. Vaught                    
        Allen R. Vaught
        Attorney-In-Charge
        SD TX Bar No. 22757
        TX Bar No. 24004966
        Baron & Budd, P.C.
        3102 Oak Lawn Avenue, Suite 1100
        Dallas, Texas  75219
        (214) 521-3605 – Telephone
        (214) 520-1181 – Facsimile
        avaught@baronbudd.com

        ATTORNEYS FOR PLAINTIFF